IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROSA HAMPTON individually, and as Administrator of the Estate of MAURICE HAMPTON, and on behalf of the minor children of the Estate of Maurice Hampton,<br><br>    Plaintiff,<br><br>        v.<br><br>THOMAS ATZERT, JR. individually, and in his capacity as a City of Atlanta Police Officer, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:13-CV-584-TWT |

**OPINION AND ORDER**

Plaintiff Rosa Hampton, individually and on behalf of the estate of Maurice Hampton, brings claims under 42 U.S.C. 1983 against the City of Atlanta and Atlanta Police Department Officer Thomas Atzert, Jr., alleging the use of excessive force in violation of the Fourth Amendment, as well as state law claims. The Plaintiff argues that Officer Atzert unreasonably used deadly force against Maurice Hampton following Hampton's flight on foot from a traffic stop. Both the City of Atlanta and Officer Atzert move for summary judgment. The Plaintiff cannot show that Officer Atzert's conduct is attributable to the City of Atlanta. However, because a witness to

the incident challenges Officer Atzert's description of the events, the Plaintiff's claims against Officer Atzert should proceed.

## I. Background

There is a significant dispute about the facts of the case. The encounter began when Officer Atzert observed Maurice Hampton run a stop sign in his vehicle. When Atzert attempted to stop Hampton, he exited the vehicle and fled on foot. Atzert pursued, also on foot. Hampton was driving without a valid license and was on parole.

According to Atzert, he caught up to Hampton, who was a larger man, and knocked him to the ground. During the ensuing struggle, Atzert removed his baton and struck Hampton. Atzert then got Hampton's hands behind his back and pulled him up off the ground, at which point another struggle began. During this struggle, Hampton took Atzert's baton and ran from Atzert. At this point, Atzert fired his weapon, striking Hampton in the back and killing him. Atzert was taken to the hospital to treat the injuries he received during the struggles. (See Def. Atzert's Statement of Material Facts ¶¶ 12-26).

The Plaintiff's description of the encounter is based on the testimony of Carold Williams, who witnessed some of the foot chase from the parking lot of a nearby club. Williams saw Hampton running from Atzert. Williams then saw Atzert holding

Hampton on the ground with one arm behind his back while Atzert struck Hampton with his baton. (Williams Dep. at 24). With Hampton apparently subdued, Atzert rose, pulled Hampton up, and began leading Hampton away. After a moment, Hampton renewed his struggles, broke free from Atzert, and began running away from the officer. When Hampton started to run, Atzert pulled his weapon and fired, hitting Hampton in the back. (Id. at 24-26). Williams contends that Hampton did not have Atzert's baton when Atzert fired his weapon. (Id. at 31).

Rosa Hampton, individually and on behalf of the Estate of Maurice Hampton, and on behalf of the minor children of the Estate of Maurice Hampton, filed suit against Atzert and the City of Atlanta on February 22, 2013. Her complaint seeks to recover damages for excessive use of force in violation of the Fourth Amendment, and for negligence, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, abuse during the course of an arrest, as well as negligence on the part of the City of Atlanta in training and supervising Atzert. (See Compl. ¶¶ 32-39).

Both the City of Atlanta and Officer Atzert are moving for summary judgment. The City contends that the Plaintiff has not shown that the City can be municipally liable for Atzert's actions. The Plaintiff has not responded to the City's motion.[1]

---

[1] The Plaintiff filed a motion for extension of time to respond to the City's motion on January 1, 2014, citing the Defendant's use of the Fifth Amendment in his deposition

Atzert argues that his use of deadly force was objectively reasonable, that he is entitled to qualified immunity because he did not violate one of Hampton's clearly established rights, and that he is entitled to official immunity on the Plaintiff's state law claims.

Atzert objects to the Plaintiff's response to his motion for two reasons. First, Atzert argues that the Plaintiff did not comply with the local rules and submit a separate statement of material facts with her response brief. Therefore, he argues that the facts set out in his statement of material facts should be deemed admitted. Second, Atzert argues that Carold Williams' affidavit should be stricken because it is not sworn pursuant to 28 U.S.C. § 1746.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show

---

as frustrating the Plaintiff's ability to respond. The Court denied the motion because it was untimely and because the Plaintiff did not show how additional discovery would be required for the Plaintiff to respond to the City's motion. (See [Doc. 40]).

the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. Discussion

**A.     The City of Atlanta's Motion for Summary Judgment**

The Plaintiff did not respond to the City of Atlanta's motion for summary judgment. In the Eleventh Circuit, the Court is required to analyze the merits of a claim before disposing of it at summary judgment even when the motion is unopposed. The City argues that the Plaintiff cannot establish municipal liability. "[M]unicipalities may not be held liable for constitutional deprivations on the theory of respondeat superior." Doe v. School Board of Broward County, Florida, 604 F.3d 1248, 1263 (11th Cir. 2010). "A municipality may be held liable 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" Id. (quoting Denno v. School Board of Volusia County, Fla., 218 F.3d 1267, 1276 (11th Cir. 2000)).

Here, the City of Atlanta is entitled to summary judgment because the Plaintiff has offered no evidence or arguments to show that Atzert's use of deadly force was

pursuant to a custom or policy of the City of Atlanta. Indeed, Atzert's testimony shows that he was given consistent training on the use of deadly force. Atzert completed annual training on the use of deadly force in 2010 and 2011. (Atzert Dep. at 61-63). This training included classroom instruction on departmental policy concerning the use of deadly force, including an overview of relevant case law. (Id. at 63). The Plaintiff has made no effort to show that the City's policies or Atzert's training encouraged the excessive use of deadly force. Accordingly, the Plaintiff cannot show that Hampton's injuries were incurred pursuant to a custom or policy of the City of Atlanta, and the City's motion for summary judgment should be granted.

### B.     Officer Atzert's Motion for Summary Judgment

Atzert argues he is entitled to summary judgment on all of the Plaintiff's claims. Atzert contends that (1) his use of deadly force was not unreasonable under the Fourth Amendment; (2) he is entitled to qualified immunity because he was acting in his discretionary capacity and did not violate the Plaintiff's clearly established rights; (3) he is entitled to official immunity from the Plaintiff's state law claims.[2]

---

[2] Officer Atzert also argues he is entitled to summary judgment because the Plaintiff did not adhere to the local rules in filing his opposition brief. Specifically, the Plaintiff did not file a separate statement of material facts addressing Atzert's statement of material facts. Additionally, the Plaintiff's brief included an affidavit from Carold Williams that was not notarized. However, because the Plaintiff's brief is also supported by Williams' deposition testimony, the Court will proceed to the merits of the motion.

### 1. Atzert's Use of Deadly Force

Atzert claims his use of deadly force was not unreasonable under the Fourth Amendment. "A claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." Scott v. Harris, 550 U.S. 372, 381 (2007) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989) (internal quotation marks and alterations omitted)). "Determining whether the use of a particular type of force in a particular situation is reasonable in the constitutional sense requires a court to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007) (quoting Scott, 550 U.S. at 383)).

Here, viewing the facts in the light most favorable to the Plaintiff, Atzert's use of deadly force may have been unreasonable. According to the Plaintiff's evidence, Hampton was shot in the back shortly after breaking free from Atzert's grasp. (See Williams Dep. at 24-26). Although the Defendant argues Hampton had snatched his police baton, the Plaintiff's witness contends Hampton had nothing in his hands when he was shot in the back. (Id. at 31). Further, there is no evidence that Atzert warned Hampton he was about to discharge his weapon. Additionally, there is no indication that Atzert attempted to pursue Hampton following his breaking free, even

though Atzert had just caught Hampton in a more extended footrace.

In Long v. Slaton, 508 F.3d 576 (11th Cir. 2007), the court listed some factors to be considered when assessing the reasonableness of deadly force:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon ... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Id. at 580 (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). Although these factors do not represent "rigid preconditions" for the use of deadly force, they do demonstrate that Atzert's use of deadly force here may have been unreasonable. See id. (quoting Scott, 550 U.S. at 381). First, it is not certain that Atzert had probable cause to believe Hampton represented a threat of serious physical harm to Atzert or others when, under the Plaintiff's facts, Hampton was unarmed when he ran the second time. (See Williams' Dep. at 26, 31). Second, it is not clear that Atzert had to use deadly force to prevent Hampton from fleeing. Atzert had already caught Hampton once on foot, and Atzert deployed his weapon almost immediately after Hampton broke free. (See id. at 26). Third, there is no indication that Atzert gave any warning to Hampton about the potential use of deadly force. The facts here, viewed in the light most favorable to the Plaintiff, paint a starkly different picture than the

facts in Long, where the use of deadly force was justified because the mentally unstable plaintiff had taken control of a police cruiser and "would have appeared to reasonable police officers to have been gravely dangerous." Id. at 581 (quoting Pace v. Capobianco, 283 F.3d 1275, 1280 n.12 (11th Cir. 2002)). Accordingly, there is a question of fact as to whether Atzert's use of deadly force was reasonable under the Fourth Amendment.

### 2. Atzert's Claim for Qualified Immunity

Atzert argues he is entitled to qualified immunity. Qualified immunity shields government officials from personal liability "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Morton v. Kirkwood, 707 F.3d 1276, 1280 (11th Cir. 2013) (quoting Pace, 283 F.3d at 1282). Once the official shows he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the official violated a clearly established right. See id. at 1281-82. Qualified immunity does not apply if the plaintiff makes such a showing. Id.

Atzert argues he was acting in his discretionary capacity at the time of the shooting, and the Plaintiff offers no arguments to the contrary. Accordingly, the

Plaintiff has the burden of showing that Hampton's clearly establish rights were violated. "A plaintiff can demonstrate that a right was clearly established in a few ways. He can, for instance, produce a materially similar case decided by the Supreme Court, [the Eleventh Circuit], or the highest court of the relevant state." Id. at 1282 (quoting Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012)). "A plaintiff can [also] point to a 'broader, clearly established principle that should control the novel facts of his situation.'" Id. (quoting Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005)). "Finally, a plaintiff may show than an 'official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point.'" Id. (quoting Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000) (internal alterations omitted)).

In Morton, the plaintiff was in his car with his engine running while making a phone call. When a police vehicle came by, the plaintiff ended his conversation and began to slowly drive away. After a few moments, the plaintiff noticed that a police officer was chasing him and he immediately stopped the car, put it in park, and put his hands up. The police officer, whose version of the events was different from the plaintiff's, nonetheless shot at the car and hit the plaintiff with seven bullets. According to the court, the plaintiff's "Fourth Amendment right to be free from the

use of deadly force was clearly established well before January 7, 2010, the night he was shot." Id. The court cited Garner for the propositions that:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so .... A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

Id. (quoting Garner, 471 U.S. at 11). Although the court made clear that the use of deadly force is not necessarily unconstitutional in all situations, the court concluded that the officer's use of deadly force in Morton was in violation of a clearly established right. Id. at 1283-84.

Here, based on the statements of law in Morton, and viewing the facts in the light most favorable to the Plaintiff, it is possible that Atzert was not justified in using deadly force to prevent Hampton's escape. At the time of the shooting, Hampton may have been unarmed and he was running away from Officer Atzert, suggesting that he did not pose an immediate threat to Officer Atzert. (Williams Dep. at 26, 31). There is no indication that any members of the public were near Hampton. Although Hampton fled from the traffic stop that initiated the encounter, there is no indication that Atzert witnessed him committing a violent crime – Atzert only observed Hampton running a stop sign.(Atzert Dep. at 80). Likewise, as noted above, it is not clear that

Atzert attempted to stop Hampton from running away by warning him he was about to fire his weapon or by giving chase on foot, even though Atzert had already caught up to Hampton on foot during the encounter. Accordingly, Atzert is not entitled to qualified immunity at the summary judgment stage. See Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002) ("[I]f the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial.").

### 3. Atzert's Claim for Official Immunity

Atzert argues he is entitled to official immunity from the state law claims against him. In Georgia, "[p]ublic agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure." Taylor v. Waldo, 309 Ga. App. 108, 111 (2011). To overcome official immunity, the plaintiff must show that the public agent acted with actual malice. See id.

> [I]n the context of official immunity, actual malice requires a deliberate intention to do wrong, and denotes express malice or malice in fact. This definition is consistent with express malice which, in criminal law, is similarly defined as a deliberate intention to do an unlawful act.... Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal.

Id. (quoting Adams v. Hazelwood, 271 Ga. 414, 414-15 (1999)).

"In the context of a shooting by a police officer, the Supreme Court of Georgia has held that if the officer shot 'intentionally and without justification, then [he] acted solely with the tortious actual intent to cause injury' and would not be protected by official immunity.'" Porter v. Massarelli, 303 Ga. App. 91, 96 (2010) (quoting Kidd v. Coates, 271 Ga. 33, 34 (1999)). "If, however, the officer shot 'in self-defense, then [he] had no actual tortious intent to harm …, but acted only with the justifiable intent which occurs in every cause of self defense, which is to use such force as is reasonably believed to be necessary to prevent death or great bodily injury to themselves or the commission of a forcible felony." Id. (citing Kidd, 271 Ga. at 34).

In Porter, the court concluded that a police officer who claimed he shot the plaintiff in self-defense was not entitled to official immunity. The plaintiff's evidence raised a factual question concerning whether the plaintiff had accelerated his car in order to drag the police officer who was caught on the car prior to the police officer discharging his weapon. Here, too, there is a question of fact that precludes Atzert from obtaining summary judgment on his claim of official immunity. Although he claims he shot Hampton because Hampton was armed and posed a threat to Atzert and others, the plaintiff's evidence suggests that the plaintiff was unarmed and moving away from Atzert and the public when the shooting occurred. (Williams Dep. at 26,

31). Accordingly, Atzert is not entitled to official immunity and his motion for summary judgment should be denied in that respect.

## IV. Conclusion

For the reasons set forth above, the Defendant City of Atlanta's Motion for Summary Judgment [Doc. 32] is GRANTED and Defendant Atzert's Motion for Summary Judgment [Doc. 33] is DENIED.

SO ORDERED, this   21   day of March, 2014.

                                              /s/Thomas W. Thrash
                                              THOMAS W. THRASH, JR.
                                              United States District Judge